IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MARSHA ROBYN WALLEN, et al. ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | Case No. 4:15CV01432  HEA |
| ) | |
| ST. LOUIS METROPOLITAN TAXICAB ) | |
| COMMISSION, et al., ) | |
| ) | |
| Defendants. ) | |

**OPINION, MEMORANDUM AND ORDER**

This matter is before the Court on Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction, [Doc. No. 2]. On September 18, 2015, the Court held a hearing on this matter, at which Plaintiff and the St. Louis Metropolitan Taxicab Commission (MTC) were represented by counsel. Arguments were presented at that time. For the reasons set forth below, Plaintiffs' Motion for a Temporary Restraining Order is denied.

**Facts and Background**

Plaintiffs' Verified Complaint sets out the following facts:

Plaintiff s bring this action based on the claim that the MTC is violating the Sherman Act, 15 U.S.C. § 1.

Plaintiffs claim that The City and the County of St. Louis is the largest major metropolitan area in the United States that does not permit ride sharing companies

to operate.  Plaintiffs bring this antitrust action to put an end to the anticompetitive conduct of Defendant MTC and several of its commissioners (the "Commissioner Defendants"), many of whom are active market participants in the very market that the MTC regulates. According to Plaintiffs, acting under the control of these market-participant members, the MTC, which is vested with the authority to regulate vehicles for hire, their drivers, and vehicle-for-hire companies in the City of St. Louis and St. Louis County, has abused its authority in order to stifle competition.

Plaintiffs seek a temporary restraining order restraining the MTC from

(1) Engaging in any conduct with the intent to prevent or shut down the operation of uberX within the MTC's jurisdiction during the pendency of the TRO, including but not limited to, filing a separate, after-the-fact TRO in state court when a live, justiciable controversy now is pending before this Court under the Sherman Act;

(2) Enacting and/or enforcing any ride-sharing-related regulations that may be adopted at the meeting of the MTC held today, September 18, 2015, or any other time during the pendency of the TRO;

(3) Otherwise engaging in any of the anticompetitive behavior described fully in Plaintiffs' Verified Complaint.

## Discussion

The Court has jurisdiction to resolve these issues under 28 U.S.C. § 1331 in that Plaintiffs' claims were brought under the Clayton and Sherman Acts

"Whether a preliminary injunction should issue involves consideration of (1) the threat of irreparable harm to the movant, (2) the state of the balance

between this harm and the injury that granting the injunction will inflict on other parties litigant, (3) the probability that movant will succeed on the merits, and (4) the public interest." *Dataphase Sys., Inc. v. C.L. Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981). The same factors govern a request for a temporary restraining order. *Roberts v. Davis*, 2011 WL 6217937, at *1 (E.D. Mo. Dec. 14, 2011). "No one factor is dispositive of a request for injunction; the Court considers all the factors and decides whether 'on balance, they weigh towards granting the injunction.'" *Braun v. Earls*, 2012 WL 4058073, at *1 (E.D. Mo. Sept. 14, 2012) (quoting *Baker Elec. Co-Op, Inc. v. Chaske*, 28 F.3d 1466, 1472 (8th Cir. 1994)).

In determining whether to grant injunctive relief, a district court generally considers "(1) the threat of irreparable harm to the movant; (2) the balance between the potential harm and any harm that granting the injunction will cause to other parties to the litigation; (3) the probability that the movant will succeed on the merits; and (4) the public interest." *United Indus. Corp. v. Clorox Co,* 140 F.3d 1175, 1179 (8th Cir. 1998) (citations omitted); *see also Dataphase Sys., Inc. v. C.L. Sys., Inc.,* 640 F.2d 109, 113 (8th Cir.1981)).  "Although "no single factor is determinative," *Dataphase,* 640 F.2d at 113, the probability-of-success factor is the most significant, *see Home Instead, Inc. v. Florance,* 721 F.3d 494, 497 (8th Cir. 2013)." *Sharpe Holdings, Inc. v. U.S. Dept. of Health and Human Services* 2015 WL 5449491, 4 (8th Cir. September 17, 2015)

In seeking a mandatory injunction that disrupts the status quo, the

Plaintiffs "must demonstrate not only that the four requirements for a preliminary injunction are met but also that they weigh heavily and compellingly in their favor." *Blankenship v. Chamberlain*, 2008 WL 4862717, at *2 (E.D. Mo. Nov. 7, 2008) (quoting *Kikumura v. Hurley*, 242 F.3d 950, 955 (10th Cir. 2001)).

Plaintiffs seek an injunction that orders MTC to refrain from any conduct with the intent to prevent or shut down the operation of uberX within the MTC's jurisdiction.

*Irreparable Harm*

Plaintiffs argue that without the TRO, "the citizens of St. Louis, the Rider Plaintiffs, Driver Plaintiffs, and Uber Plaintiffs face a threat of immediate and irreparable harm if the MTC is permitted to ban uberX. Plaintiffs claim the riders will be forced to pay supracompetitive prices for transportation due to the MTC"s "cartel." They further contend the riders will be forced to endure poor service and fewer transportation options in St. Louis, drunk driving will be demonstrably higher in St. Louis, leading to obvious public health and safety concerns; the driver Plaintiffs will suffer immediate and irreparable harm because they will be prevented from availing themselves of thousands of new opportunities for drivers to earn a living; current taxi drivers who wish to drive on the Uber platform are also suffering immediate harm as a result of the MTC's anticompetitive conduct. Based on Uber's experience in other metropolitan areas, drivers who are currently

operating taxis often prefer to move to a platform, such as uberX, where they do not toil under the daily debt of leasing a medallion, and can work the hours that fit their schedule, rather than the hours the license owner commands.  Plaintiffs also argue Uber is losing potential business by the MTC's actions.

Plaintiffs' alleged harm is not irreparable, as the claimed harm is either purely economic or is not irreparable.  The fact that drivers and riders may prefer the Uber platform does not rise to the level of irreparable harm.  Likewise, purely economic harm is not irreparable harm.  *Alternative Med. & Pharmacy, Inc. v. Express Scripts, Inc.*, 2014 WL 4988199, at *7 (E.D. Mo. Oct. 7, 2014) ("[T]he harm is purely economic and therefore not irreparable.").

Tellingly, at the hearing, counsel for the MTC pointed out that the Uber Plaintiffs have not even applied for permits to operate in St. Louis City and St. Louis County.  While counsel for Plaintiff argued that Uber's "goodwill" is damaged by customers from other cities when they come to St. Louis, such tenuous harm is grossly speculative.  Until such time as Uber applies for and is denied a permit with resulting concrete consequences, there has been no showing of irreparable harm.

*Likelihood of Success*

The Court also finds at this stage of the litigation that Plaintiffs have not demonstrated that they are likely to succeed on the merits of their claims, which weighs against the award of injunctive relief.  Plaintiffs object to the licensing and

vehicle permits, with limited permits available. Counsel for the MTC represented to the Court that the permits are likely to be given, subject to the conditions required, *i.e.*, that the drivers are fingerprinted for background checks. While Plaintiffs do not deny that they oppose fingerprinting because it is inconvenient for the drivers and Uber, Defendant MTC urges that the fingerprinting requirement is in place for the safety of the public in weeding out individuals who may not be completely trustworthy. Moreover, the requirement that the drivers obtain a certain type of license from the State of Missouri, *i.e.*, a chauffeur's license, again furthers the safety of passengers and has significant insurance impact.

*Public Interest*

The public interest favors Defendant. As stated, *supra,* the fingerprinting and licensing requirements are crafted to maintain the caliber and reliability of the drivers. The licensing requirements ensure that the claimed insurance coverage for the drivers does not become ineffective by reason of an exclusion. Furthermore, the reasons given by Plaintiffs for the need for injunctive relief are hardly altruistic, whereas Defendant has presented clear and unequivocal public interest serving reasons behind the requirements encompassed within the permits. Therefore, this factor also weighs in favor of denial.

*Balance of Harms*

Plaintiffs essentially ask the Court to order the MTC to allow the Uber Defendants to operate in the City of St. Louis and St. Louis County. Thus, they are

asking for the ultimate relief sought by their complaint. "The purpose of a [temporary restraining order] is not to give the plaintiff the ultimate relief it seeks. It is . . . to keep the parties, while the suit goes on, as far as possible in the respective positions they occupied when the suit began." *WarnerVision Entm't Inc. v. Empire of Carolina, Inc.*, 101 F.3d 259, 261-62 (2d Cir. 1996). Because Plaintiffs seek the ultimate relief they demand in the Complaint, Defendant will be harmed by the loss of its right to trial. Plaintiffs have yet to apply for a permit from Defendant. The harm Plaintiffs claim is therefore speculative, and as such, is not presently causing Plaintiffs any identifiable harm.

## Conclusion

The Court has considered the entire record and the arguments presented at the hearing on this matter. Based upon the foregoing consideration of all of the *Dataphase* factors, Plaintiffs' demand for mandatory and ultimate relief, and the failure to establish irreparable harm, Plaintiffs are not entitled to a temporary restraining order.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' Motion for a Temporary Restraining Order, [Doc. No. 2], is **DENIED**.

Dated this 18th day of September, 2015.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE