UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| **MARSHA ROBYN WALLEN, et al.,** | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | ) Case No: 4:15CV1432 HEA |
| | ) |
| **ST. LOUIS METROPOLITAN TAXICAB COMMISSION, et al.,** | ) |
| | ) |
| Defendants. | ) |

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court on Defendants Metropolitan Taxicab Commission of Metropolitan St. Louis, (MTC), Asfaw, Hamilton, McNutt , and Rudawsky's Motion to Dismiss or, in the Alternative, A Judgment on the Pleadings, [Doc. No. 39], Defendants St. Louis County and Yellow Cab Company, Best Transportation, Inc., Best Black Car, LLC, and Best Sedan Services, LLC's Motion to Dismiss, [Doc. No. 41] and Gateway Taxi Management Company, d/b/a Laclede Cab Company's Motion to Dismiss, [Doc. No. 45], (Collectively, the Taxi Defendants). Plaintiffs oppose the motions. For the reasons set forth below, the MTC and Individual Defendant's Motion is denied. The Taxi Defendants' Motions are granted.

**Facts and Background**

Plaintiffs brought this action alleging violations of the Sherman Act, 15 U.S.C. § 1, by Defendants in Defendants attempt to prohibit Uber and those using the uberX product from operating in the City and County of St. Louis, Missouri. Plaintiffs claim that riders, drivers and Uber, a Transportation Network Company, (TNC) are prohibited by the actions of Defendants from competing in the St. Louis market for-hire transportation.  Plaintiffs claim to bring this antitrust action to put "an end to the anticompetitive conduct of Defendant MTC and several of its commissioners (the "Commissioner Defendants"), many of whom are active market participants in the very market that the MTC regulates." According to Plaintiffs, acting under the control of these market-participant members, the MTC, which is vested with the authority to regulate vehicles for hire, their drivers, and vehicle-for-hire companies in the City of St. Louis and St. Louis County, has abused its authority in order to stifle competition.

Defendant MTC and the individual commissioners move to dismiss based on immunity from suit.  The Taxi Defendants move to dismiss move based on a failure to state a claim under a theory of *respondeat superior*, and immunity.

## Legal Standard

The purpose of a Rule 12(b)(6) motion to dismiss for failure to state a claim is to test the legal sufficiency of a complaint so as to eliminate those actions "which are fatally flawed in their legal premises and deigned to fail, thereby

sparing litigants the burden of unnecessary pretrial and trial activity." *Young v. City of St. Charles*, 244 F.3d 623, 627 (8th Cir. 2001) (citing *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989)). "To survive a motion to dismiss, a claim must be facially plausible, meaning that the 'factual content...allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' " *Cole v. Homier Dist. Co., Inc.*, 599 F.3d 856, 861 (8th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The Court must "accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party." *Id.* (quoting *Coons v. Mineta*, 410 F.3d 1036, 1039 (8th Cir. 2005)). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster. *Iqbal*, 556 U.S. at 678.

## Discussion

**Immunity-MTC**

"Every contract, combination in the form of a trust or otherwise, or conspiracy, in restraint of trade" is illegal under § 1 of the Sherman Act. 15 U.S.C. § 1. Section 1 is not read literally, but rather prohibits only *"unreasonable"* restraints of trade. *Texaco Inc. v. Dagher,* 547 U.S. 1, 5 (2006) (emphasis in original) (citations omitted). Thus, courts "presumptively appl[y] the rule of reason analysis, under which antitrust plaintiffs must demonstrate that a particular contract

3

or combination is in fact unreasonable and anticompetitive before it will be found unlawful." *Id.*

The antitrust laws do not, however, bar sovereign states from imposing market restraints "as an act of government." *Parker v. Brown,* 317 U.S. 341, 352 (1943). Because cities, towns, and other political subdivisions are not themselves sovereign, the Supreme Court has made clear that *Parker* does not apply directly to them. *See Columbia v. Omni Outdoor Advertising, Inc.,* 499 U.S. 365, 370, (1991); *Lafayette v. La. Power & Light Co.,* 435 U.S. 389, 411–13 (1978) (plurality opinion). Rather, substate governmental entities receive immunity from antitrust scrutiny only when they act "pursuant to state policy to displace competition with regulation or monopoly public service." *Lafayette,* 435 U.S. at 413. This rule is designed to preserve to the States "their freedom ... to use their municipalities to administer state regulatory policies free of the inhibitions of the federal antitrust laws without at the same time permitting purely parochial interests to disrupt the Nation's free-market goals." *Id.* at 415–16.

The Supreme Court addressed antitrust immunity for substate governmental entities in *FTC v. Phoebe Putney Health Sys. Inc.,* ––U.S. ––, 133 S.Ct. 1003 (2013). In *Phoebe,* the Supreme Court reiterated that "immunity will only attach to the activities of local governmental entities if they are undertaken pursuant to a 'clearly articulated and affirmatively expressed' state policy to displace

4

competition." *Phoebe,* 133 S.Ct. at 1011 (quoting *Cmty. Commc'ns Co. v. Boulder,* 455 U.S. 40, 52 (1982)).  The "clear articulation" test requires that the anticompetitive effect of the challenged action be a "foreseeable result" of what the state authorized.  *Id.*  Mere state-law authorization to act is insufficient to establish state action immunity; "the substate governmental entity must also show that it has been delegated authority to act or regulate anticompetitively*." Phoebe,* 133 S.Ct. at 1012 (citing *Omni,* 499 U.S. at 372)

The Court has acknowledged that it would be "unrealistic" to "require state legislatures to *explicitly* authorize specific anticompetitive effects before state action immunity could apply" because "'[n]o legislature can be expected to catalog all of the anticipated effects' of a statute delegating authority to a substate governmental entity." *Phoebe,* 133 S.Ct. at 1012 (emphasis added) (quoting *Hallie,* 471 U.S. at 43).  "Instead, we have approached the clear-articulation inquiry more practically, but without diluting the ultimate requirement that the State must have affirmatively contemplated the displacement of competition such that the challenged anticompetitive effects can be attributed to the 'state itself.'" *Id.* at 1013 (quoting *Parker,* 317 U.S. at 352).  "[A] state policy to displace federal antitrust law [is] sufficiently expressed where the displacement of competition [is] the inherent, logical, or ordinary result of the exercise of authority delegated by the state legislature." *Phoebe,* 133 S.Ct. at 1012–13. "In that scenario, the State must

have foreseen and implicitly endorsed the anticompetitive effects as consistent with its policy goals." *Id.* at 1013.

More recently, the Supreme Court has had occasion to again address *Parker* immunity in *North Carolina State Board of Dental Examiners v. Federal Trade Commission*, 135 S.Ct 1101 (2015).

> *Parker* immunity requires that the anticompetitive conduct of nonsovereign actors, especially those authorized by the State to regulate their own profession, result from procedures that suffice to make it the State's own. See *Goldfarb, supra,* at 790, 95 S.Ct. 2004; see also 1A P. Areeda & H. Hovencamp, Antitrust Law ¶ 226, p. 180 (4th ed. 2013) (Areeda & Hovencamp). The question is not whether the challenged conduct is efficient, well-functioning, or wise. See *Ticor, supra,* at 634–635, 112 S.Ct. 2169. Rather, it is "whether anticompetitive conduct engaged in by [nonsovereign actors] should be deemed state action and thus shielded from the antitrust laws." *Patrick v. Burget,* 486 U.S. 94, 100, 108 S.Ct. 1658, 100 L.Ed.2d 83 (1988).
>
> To answer this question, the Court applies the two-part test set forth in *California Retail Liquor Dealers Assn. v. Midcal Aluminum, Inc.,* 445 U.S. 97, 100 S.Ct. 937, 63 L.Ed.2d 233, a case arising from California's delegation of price-fixing authority to wine merchants. Under *Midcal,* "[a] state law or regulatory scheme cannot be the basis for antitrust immunity unless, first, the State has articulated a clear policy to allow the anticompetitive conduct, and second, the State provides active supervision of [the] anticompetitive conduct." *Ticor, supra,* at 631, 112 S.Ct. 2169 (citing *Midcal, supra,* at 105, 100 S.Ct. 937).
>
> *Midcal* 's clear articulation requirement is satisfied "where the displacement of competition [is] the inherent, logical, or ordinary result of the exercise of authority delegated by the state legislature. In that scenario, the State must have foreseen and implicitly endorsed the anticompetitive effects as consistent with its policy goals." *Phoebe Putney,* 568 U.S., at ––––, 133 S.Ct., at 1013. The active supervision requirement demands, *inter alia,* "that state officials have and exercise power to review particular anticompetitive acts of private parties and disapprove those that fail to

accord with state policy." *Patrick, supra,* 486 U.S., at 101, 108 S.Ct. 1658.

The two requirements set forth in *Midcal* provide a proper analytical framework to resolve the ultimate question whether an anticompetitive policy is indeed the policy of a State. The first requirement—clear articulation—rarely will achieve that goal by itself, for a policy may satisfy this test yet still be defined at so high a level of generality as to leave open critical questions about how and to what extent the market should be regulated. See *Ticor, supra,* at 636–637, 112 S.Ct. 2169. Entities purporting to act under state authority might diverge from the State's considered definition of the public good. The resulting asymmetry between a state policy and its implementation can invite private self-dealing. The second *Midcal* requirement—active supervision—seeks to avoid this harm by requiring the State to review and approve interstitial policies made by the entity claiming immunity.

*Midcal* 's supervision rule "stems from the recognition that '[w]here a private party is engaging in anticompetitive activity, there is a real danger that he is acting to further his own interests, rather than the governmental interests of the State.' " *Patrick, supra,* at 100, 108 S.Ct. 1658. Concern about the private incentives of active market participants animates *Midcal* ' s supervision mandate, which demands "realistic assurance that a private party's anticompetitive conduct promotes state policy, rather than merely the party's individual interests." *Patrick, supra,* at 101, 108 S.Ct. 1658.

*Id.,* 135 S. Ct. at 1111–12.

The authority afforded the MTC by the Missouri legislature is expressed in RSMo. Section 67.1804:

For the regional taxicab district, there is hereby established a "Regional Taxicab Commission", which shall be a body politic and corporate vested with all the powers expressly granted to it herein and created for the public purposes of recognizing taxicab service as a public transportation system, improving the quality of the system, and exercising primary authority over the provision of licensing, control and regulations of taxicab services within the district.

RSMo. Section 67.1808(8) empowers the MTC to:

7

> Adopt a taxicab code to license and regulate taxicab companies and individual taxicabs within the district consistent with existing ordinances, and to provide for the enforcement of such code for the purpose of improving the quality of taxicab service within the district.

The MTC was established in order to

> [L]icense, supervise, and regulate any person who engages in the business of transporting passengers in commerce, wholly within the regional taxicab district established in section 67.1802, in any motor vehicle designed or used to transport not more than eight passengers, including the driver.

RSMo. Section 67.1809.1

Defendant MTC has the authority to implement internally the powers which it has been granted.   RSMo. Section 67.1810.1.

> The MTC is authorized to
>
> a. [S]tudy and take into account rate and fee structures as well as the number of existing taxicab licenses within the district in considering new applications for such licenses." RSMo. Section 67.1818;
>
> b. "[E]xercis[e] primary authority over the provision of licensing, control and regulations of taxicab services within the district…" RSMo. Section 67.1804;
>
> c. "[L]icense, supervise, and regulate any person who engages in the business of transporting passengers in commerce, wholly within the regional taxicab district." RSMo. Section 67.1809.1; and
>
> d. Enact a Taxicab Code that is "…relating to taxicab issues such as licensing, regulation, inspection, and enforcement…" RSMo. Section 67.1812.

Although the MTC argues that these detailed enumerations of the MTC's powers and authority give rise to a clear articulation of a policy to allow

anticompetitive conduct, a close analysis of the MTC's authority establishes just the opposite. The establishment of the MTC demonstrates that the contemplation was that its purpose was to *regulate* and *oversee* vehicles for hire to ensure public safety standards and maintain the integrity of the public transportation system. Rather than being exclusionary, i.e. allowing a policy of anticompetition, the statutory framework provides a means for ensuring the vehicle for hire industry is properly licensed, that the rates and fee structures are regulated and the individual drivers are properly screened. None of the statutory authority gives any indication that the legislature intended to adopt a policy of anticompetition through the creation of the MTC. Indeed, it was "created for the public purposes of recognizing taxicab service as a public transportation system, improving the quality of the system, and exercising primary authority over the provision of licensing, control and regulations of taxicab services within the district." RSMo. Section 67.1804. The displacement of competition is not the logical result of the statutory framework, rather, the logical result is providing a public transportation system that is safe and efficient. As such, the state has not clearly articulated a policy of allowing anticompetitive conduct. The MTC is therefore not entitled to *Parker* immunity. Accordingly, the Motion to Dismiss based on this immunity must be denied.

**County Cab, Best Transportation and Laclede Cab**

Defendants County Cab, Best Transportation and Laclede Cab (the Taxi Defendants), seek dismissal arguing that the Complaint fails to allege any actions taken by these defendants that would give rise to participation in a conspiracy to force Plaintiffs out of the taxi cab market in violation of the Sherman Act. Plaintiffs respond by arguing that the motion must fail because of the numerous allegations of the actions taken by the owners and managers of the Taxi Defendant who serve on the MTC in their "capacity as representatives of their respective companies."

Defendants correctly argue that this theory, *i.e.* that the business entities are responsible for the actions of their owners and managers, is not alleged in the Complaint.  Plaintiffs are attempting to impute liability of the individual commissioners to the companies which they own and/or manage.  The Complaint, however, does not set forth any allegations that the individual commissioners were acting on behalf of their companies when they took the alleged improper actions. Moreover, this type of claim cannot be inferred from the allegations in the Complaint. There are no allegations that the individuals on the Commission were acting within the course and scope of their employment such that the companies would be vicariously liable for the actions. *Cent. Trust & Inv. Co. v. Signalpoint Asset Mgmt., LLC*, 422 S.W.3d 312, 323 (Mo. 2014)(en banc).  The Complaint contains no agency allegations which would give rise to a claim against the Taxi

Defendants for the actions of the individuals.  Accordingly, the Complaint fails to state a cause of action against the Taxi Defendants.

## Conclusion

The MTC is not entitled to immunity because the State has failed to clearly articulate a policy of anticompetitive conduct.  The motion to dismiss based on such immunity is not well taken.

In that the Complaint fails to allege actions taken by the Taxi Defendants which would give rise to a cause of action under the Sherman Act, their motion is meritorious.  No agency relationship has been alleged with regard to the individual Commissioners and the companies they allegedly own and/or manage, therefore, Plaintiffs cannot claim the Taxi Defendants are vicariously liable for the actions of their employees.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants Metropolitan Taxicab Commission of Metropolitan St. Louis, Asfaw, Hamilton, McNutt , and Rudawsky's Motion to Dismiss or, in the Alternative, A Judgment on the Pleadings, [Doc. No. 39], is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants St. Louis County and Yellow Cab Company, Best Transportation, Inc., Best Black Car, LLC, and Best Sedan Services, LLC's Motion to Dismiss, [Doc. No. 41], is **GRANTED**.

11

**IT IS FURTHER ORDERED** that Gateway Taxi Management Company, d/b/a Laclede Cab Company's Motion to Dismiss, [Doc. No. 45], is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff is given 14 days from the date of this Opinion, Memorandum and Order to file an Amended Complaint consistent with the rulings herein.

Dated this 30th day of September, 2016.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE